```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/16/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
MICHAEL ROCKMAN,                                              :
                                                              :
                              Plaintiff,                      :
                                                              :
                    -against-                                 :   19-CV-5997 (VEC)
                                                              :
                                                              :   OPINION AND ORDER
USI INSURANCE SERVICES LLC,                                   :
                                                              :
                              Defendant.                      :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

       Plaintiff Michael Rockman sued USI Insurance Services LLC and a number of other entities (collectively, "Defendants") for age-based discrimination pursuant to the Age Discrimination Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq. See generally* Am. Compl., Dkt. 35. Plaintiff also alleged that Defendants failed to pay his commissions in a timely way in violation of New York Labor Law, §§ 191, 198. *Id.* Defendant USI Insurance Services LLC ("USI") has moved for summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56.[1] Dkt. 46. For the following reasons, Defendant's motion is GRANTED.

---

[1]     Plaintiff dismissed its claims against the other entity Defendants, USI Insurance Services National, Inc., USI Northeast & Emerson Reid LLC, and Wells Fargo Insurance Services USA Inc. Dkt. 62.

## BACKGROUND[2]

Mr. Rockman, now an 82-year-old man, began working at USI, an insurance brokerage and consulting firm, in 2017, when USI acquired Wells Fargo Insurance Services USA ("Wells Fargo"), his employer at the time.[3] Def. 56.1 Stmt. ¶¶ 1-4. Mr. Rockman worked part-time at USI, servicing and advising three clients with which he had a relationship that predated his employment at Wells Fargo: L3 Technologies, Inc. ("L3"), and two companies that had been spun-off of L3, Broadcast Sports International, LLC ("BSI") and FSA, LLC ("FSA"). *Id.* ¶ 20. Mr. Rockman did not originate or work on any new accounts during his tenure at USI. *Id.* ¶¶ 21-22. Pursuant to the terms of his Employment Agreement, Plaintiff was compensated solely on a commission basis, against which he received a draw.[4] *Id.* ¶ 8; Garland Decl., Ex. 4. When USI acquired Wells Fargo in 2017, Mr. Rockman's annual draw was set at $252,651. Def. 56.1 Stmt. ¶ 45.

In addition to Mr. Rockman, four other USI employees worked on the L3 account: (i) Denise Fiore, Senior Vice President and Employee Benefits Practice Leader; (ii) Tom Kelly, Senior Account Executive; (iii) Joanna Mohindra, Account Executive; and (iv) Paula Lora,

---

[2]   All facts described herein are undisputed unless otherwise stated. The Court will refer to the parties' submissions as follows: the Declaration of David Garland in support of Defendant's motion for summary judgment, Dkt. 49, as "Garland Decl."; Defendant's Local Civil Rule 56.1 Statement of Undisputed Facts, Dkt. 51, as "Def. 56.1 Stmt."; the Declaration of Denise Fiore in support of Defendant's motion for summary judgment, Dkt. 47, as "Fiore Decl."; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion, Dkt. 56, as "Pl. Opp."; and Plaintiff's Response to Defendant's Local Civil Rule 56.1 Statement of Material Facts, Dkt. 57, as "Pl. 56.1 Resp." The Court will refer to Mr. Rockman's deposition, Dkt. 49-1, as "Rockman Dep."; Amy Mausser's deposition, Dkt. 49-3, as "Mausser Dep."; and Denise Fiore's deposition, Dkt. 49-2, as "Fiore Dep."

[3]   Mr. Rockman's title at USI is not entirely clear. Mr. Rockman's Employment Agreement indicates that Mr. Rockman was employed as a "Producer." Garland Decl., Ex. 4. Although Mr. Rockman acknowledged that he signed the Employment Agreement, he testified that he had "[n]ever heard [the word producer] in [his] life until the employment agreement," and that he believed his title was "[s]enior vice president responsible for servicing a book of business." Rockman Dep. at 52:25-53:06, 103:03-103:5. Mr. Rockman described the producers at USI as "sales guys," who "didn't do what [he] did." *Id.* at 109:12-109:18.

[4]   USI assumed the terms of Plaintiff's Employment Agreement with Wells Fargo when USI acquired Wells Fargo in 2017. Def. 56.1 Stmt. ¶ 5. Section 16 of the Employment Agreement, entitled "Assignment," allowed Wells Fargo to assign the Agreement to USI without Mr. Rockman's approval. *Id.* n.3.

Junior Account Manager. *Id.* ¶ 26. Unlike Mr. Rockman, they were all full-time, salaried employees. *Id.* ¶¶ 78, 80.

On July 1, 2018, L3 notified USI that it was terminating their business relationship. *Id.* ¶ 41. USI continued to work with L3 over the subsequent months to achieve an orderly wind down of the account. *Id.* ¶¶ 42-43. The L3 account was formally transferred to L3's new insurance broker on August 31, 2018. *Id.* ¶ 43. The L3 account had been projected to generate approximately $3 million in revenue for USI in 2018. *Id.* ¶ 39. In contrast, the BSI and FSA accounts were projected collectively to generate revenue of approximately $150,000 in 2018. *Id.* ¶ 40; Pl. 56.1 Resp. ¶ 110.

Following the loss of the L3 account, and the significant revenue it generated, Mr. Rockman's annual draw decreased from $252,651 to $5,000. Def. 56.1 Stmt. ¶ 48. On August 28, 2018, USI's Chief Financial Officer for the Northeast Region confirmed to Amy Mausser, USI's Chief Human Resources Officer for the Northeast Region, that the loss of the L3 account meant "Rockman's draw will essentially disappear." *Id.* ¶ 49. On September 7, 2018, Ms. Mausser met with Ms. Fiore, Mr. Rockman's supervisor, and they concluded that there was not enough work to keep Mr. Rockman employed in light of the loss of the L3 account. Fiore Dep. at 64:08-65:08, 66:11-66:19; Mausser Dep. at 17:14-17:19, 55:13-56:02. Although USI considered transitioning Mr. Rockman into a salaried role as an account executive, Ms. Fiore and Ms. Mausser ultimately concluded that he lacked the skills and experience required for that position. Fiore Decl. ¶ 9; Mausser Dep. at 37:21-38:10, 39:20-40:07, 128:11-128:21, 134:11-134:18. Ms. Fiore and Ms. Mausser also discussed assigning Mr. Rockman a new book of business but concluded that doing so would be incompatible with USI's business model, which is premised on producers originating their own client accounts. Fiore Dep. at 147:19-150:06; Mausser Dep. at 24:21-24:25, 36:25-37:12.

On September 11, 2018, Ms. Fiore met with Mr. Rockman to discuss his employment status. Rockman Dep. 122:09-123:16. Mr. Rockman could not identify an available alternative role for himself at USI but expressed interest in continuing his employment and suggested that USI could create a role for him to serve as a mentor to younger employees. *Id.* at 123:20-123:25, 125:13-125:16, 139:05-139:11; Fiore Decl. ¶ 10, Ex. 1.

On September 20, 2018, Ms. Fiore informed Mr. Rockman that USI was unable to find an alternative position for him and that the company could not sustain his high level of compensation in light of the loss of the L3 account. Fiore Decl. ¶ 11. On September 21, 2018, Ms. Mausser sent Mr. Rockman a formal termination letter. Garland Decl., Ex. 11. The letter provided that Mr. Rockman's employment would terminate on October 5, 2018 and reiterated that his termination was "due to the loss of L3" and the resulting lack of "revenue to support [his] employment." *Id.* Mr. Rockman was 80 years old at the time of his termination. Pl. 56.1 Resp. ¶ 99.

Pursuant to Section 3.4 of Mr. Rockman's Employment Agreement, entitled "Commissions Upon Termination," Mr. Rockman was entitled to receive only commissions earned by him *and* received by USI prior to his termination. Garland Decl., Ex. 4. Nevertheless, USI offered to pay Mr. Rockman all of his earned L3 commissions, even if they were received by USI after his termination date. *Id.*, Ex. 11. USI received the balance of the delayed commission payments from L3 in early 2019, and Mr. Rockman received his final L3 commission payment totaling $19,209.30 on May 3, 2019. Def. 56.1 Stmt. ¶¶ 89, 97.

On June 26, 2019, Plaintiff initiated this action, alleging age-based discrimination in violation of the ADEA, NYSHRL, and NYCHRL. *See* Am. Compl. ¶¶ 27-44. Plaintiff also alleges that USI failed to pay timely his final commission in violation of New York Labor Law. *Id.* at ¶¶ 45-47.

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). To defeat summary judgment, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). A party may not "rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [his] version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). Summary judgment cannot be defeated by the presentation of "but a 'scintilla of evidence' supporting [plaintiff's] claim." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

On a motion for summary judgment, courts "construe the facts in the light most favorable to the non-moving party and [] resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per curiam) (internal citation and quotation marks omitted). A district court is not, however, under any "obligation to engage in an exhaustive search of the record" when considering a motion for summary judgment. *Jones v. Goord*, 435 F. Supp. 2d 221, 259 (S.D.N.Y. 2006) (citing *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470–71 (2d Cir. 2002)).

I. **Age-Based Discrimination Claims**

Age-based discrimination claims brought pursuant to the ADEA and NYSHRL are analyzed using the familiar three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).  *Gorzynski v. Jet Blue Airways Corp.*, 596 F.3d 93, 105-06 (2d Cir. 2010).  Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  411 U.S. at 802.  If the plaintiff meets that burden, the burden shifts to the defendant to proffer a legitimate non-discriminatory reason for the challenged action.  *Id.*  The final and ultimate burden is on the plaintiff to establish that the defendant's proffered reason is pretextual and that his age was the "but-for" cause of the employer's action.  *Gorzynski,* 596 F.3d at 106 (citing *Gross v. Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)); *Chapotkat v. Cty. of Rockland*, 605 F. App'x 24, 25–26 (2d Cir. 2015).[5]

A. **Plaintiff Has Failed to Establish a *Prima Facie* Case of Age Discrimination**

To establish a *prima facie* case of age discrimination, a plaintiff must show: (1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he experienced an adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination.[6]  *Gorzynski,* 596 F.3d at 106.  Only the fourth factor is in dispute in this case.

---

[5]  Under the NYCHRL, a plaintiff need only show that his age was a motivating factor for the employer's action.  *See Teasdale v. New York City Fire Dep't, FDNY*, 574 F. App'x 50, 51 (2d Cir. 2014).

[6]  Plaintiff argues that because "[Mr. Rockman] was discharged from his position and sought employment with [USI] in another position, the test for a *prima facie* case involving a reduction-in-force seems most applicable here." Pl. Opp. at 10-11.  The Court disagrees.  This is not a reduction-in-force case; Plaintiff's Amended Complaint alleges that he was the *only* employee that USI terminated.  Am. Compl. ¶ 20 ("Defendant[] did in fact place all other members of the L3 team with other accounts and continued their employment past Mr. Rockman's termination.  Defendants refused to do the same for Mr. Rockman because of his age, 80.").  Moreover, Plaintiff has presented no evidence that USI ever stated or implied that it terminated Mr. Rockman because it was eliminating his department or reducing its workforce.  *See Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1221

An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in degrading terms, the employer's invidious comments about others in the plaintiff's protected group, more favorable treatment of employees not in the protected group, or the sequence of events leading to the adverse employment action. *Littlejohn v. City of New York,* 795 F.3d 297, 312 (2d Cir. 2015); *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994). Mr. Rockman's sole argument to support an inference of discrimination is that, following the loss of the L3 account, USI refused to consider him for an alternative position within the company despite finding positions for the younger members on the L3 team. Pl. Opp. at 12-14. This argument is unsupported by any evidence in the record and is insufficient to raise an inference of age discrimination.

At the outset, an employer is not required to consider or offer a replacement position for a terminated employee as long as the employer's decision not to do so is based on non-discriminatory reasons. *Campbell v. Daytop Vill., Inc.,* 201 F.3d 430, at *2 (2d Cir. 1999) ("an employer is not obliged to find another position for an employee who is about to be terminated."); *Alam v. HSBC Bank USA, N.A.*, No. 07-CV-3540, 2009 WL 3096293, at *11 (S.D.N.Y. Sept. 28, 2009) (noting that the company's failure to offer plaintiff one of five alternative positions was not evidence of discrimination because it had legitimate, non-discriminatory reasons for its decision). Put differently, USI's failure to find or create an alternative position for Mr. Rockman does not, without more, give rise to an inference of age discrimination. *Stanojev v. Ebasco Servs., Inc.,* 643 F.2d 914, 920 (2d Cir. 1981) (noting that there was no basis for an inference of discrimination merely because defendant "did not create another new position for [the plaintiff] in order to continue him on the payroll"); *Kalra v. HSBC*

---

(2d Cir. 1994) (applying the reduction-in-force standard because "the reason given by [defendant] for [plaintiff's] termination was a reduction-in-force.").

*Bank USA, N.A.,* 567 F. Supp. 2d 385, 400 (E.D.N.Y. 2008) ("Defendant was under no obligation to provide plaintiff with another position after terminating him for performance and behavioral issues."); *Faldetta v. Lockheed Martin Corp.,* No. 98-CV-2614, 2000 WL 1682759, at *10 (S.D.N.Y. Nov. 9, 2000) (finding that under the ADEA, defendant employer "is not obligated to find another position for an employee who is about to be terminated, even if he is qualified for that position").

Nevertheless, despite having no obligation to do so, Plaintiff admits that USI *did* consider alternative options for him, including assigning Mr. Rockman another book of business or trying to find him a full-time, salaried position within the Employee Benefits Practice. Def. 56.1 Stmt. ¶¶ 53, 62-65; Fiore Dep. at 74:15-75:14, 76:06-76:17, 78:07-78:13; Mausser Dep. at 24:11-26:05; Fiore Decl. ¶¶ 8, 10. Plaintiff also concedes that he himself could not identify an existing position that was suitable for him. Def. 56.1 Stmt. ¶¶ 62-65. Although Mr. Rockman may have been disappointed that USI decided not to create a new position for him or to offer him an existing one, his argument that USI refused to consider other options is belied by the uncontroverted evidence in the record.[7]

Plaintiff's argument that he was treated less favorably than younger members of the L3 team, namely Mr. Kelly, Ms. Mohindra, and Ms. Lora, is similarly unsupported by evidence in the record. When a plaintiff relies on evidence that he was treated less favorably than employees outside of his protected group to raise an inference of discrimination, he must establish that he was "similarly situated in all material respects" to the comparators. *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). In determining whether employees are similarly situated in

---

[7] Mr. Rockman also argues that USI refused to allow him to "try to acquire new business, though the cost to Defendant was insignificant." Pl. Opp. at 10. Plaintiff cites no evidence in the record that supports this claim; Mr. Rockman himself testified that he did not see his position as "a sales role," and he never attempted to "get new business" during his tenure at USI (including after L3 notified USI that it was terminating the relationship); his sole focus was "on servicing and cross-selling to his existing accounts." Def. 56.1 Stmt. ¶¶ 21-23.

"all material respects," courts typically consider the employees' "positions, job responsibilities, and reporting structures." *Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 21-22 (E.D.N.Y. 2015); *Shaw v. McHugh*, 12-CV-6834, 2015 WL 1400069, at *9 (S.D.N.Y. Mar. 26, 2015) ("Distinctions in assignment, reporting structure, responsibilities and workplace standards undercut [plaintiff's] argument that his comparators are similarly situated."). Although the question of whether employees are similarly situated is generally a question of fact for a jury, "this rule is not absolute and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790–91 (2d Cir. 2007) (internal quotation marks omitted).

Mr. Rockman has offered no evidence to support his argument that he was similarly situated to Mr. Kelly, Ms. Mohindra, or Ms. Lora. At the outset, Mr. Rockman admitted that he worked part-time at USI and was compensated by commissions, while Mr. Kelly, Ms. Mohindra, and Ms. Lora were all full-time, salaried employees. Def. 56.1 Stmt. ¶¶ 78, 80. Plaintiff further admitted that the job titles and responsibilities of Mr. Kelly, Ms. Mohindra, and Ms. Lora were entirely different than his job title and responsibilities. *Id*. ¶¶ 30-35, 37-38, 84. According to Plaintiff, Mr. Kelly, who was 59 years old at the time Plaintiff was terminated, worked as a Senior Account Executive; his responsibilities included day-to-day contact with corporate vice presidents, employee benefits departments, vendors, and human resources business units. *Id*. ¶¶ 33-34, 81. Similarly, Plaintiff testified that Ms. Mohindra, who was 39 years old at the time Plaintiff was terminated, worked as an Account Executive and was responsible for preparing monthly and quarterly financial reporting packages, attending and presenting financials at meetings with L3, and conducting due diligence for mergers and acquisitions. *Id*. ¶¶ 35, 82. Mr. Rockman has offered no evidence to suggest that he performed any of the tasks performed by Mr. Kelly or Ms. Mohindra or that he had any of the responsibilities of a full-time Account

Executive.[8]  Plaintiff's self-serving and conclusory statement that he performed "account executive duties," Pl. Opp. at 7, 13, is factually unsupported and insufficient to establish that he was similarly situated to Mr. Kelly or Ms. Mohindra.[9]  *Deebs v. Alstrom Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009) (holding that where "the only evidence cited in plaintiff's brief is [his] own self-serving testimony … [s]uch evidence is insufficient to defeat summary judgment.") (internal quotation marks omitted).  Finally, Plaintiff testified that Ms. Lora, who was 44 years old at the time Plaintiff was terminated, worked in an administrative capacity and that her administrative skills "were easily transferable to other accounts." Def. 56.1 Stmt. ¶ 84.  Mr. Rockman has offered no evidence to suggest that he had any administrative responsibilities or would have had the requisite skills to assume an administrative role.

In sum, Plaintiff has failed to demonstrate that he was similarly situated to Mr. Kelly, Ms. Mohindra, or Ms. Lora.  Accordingly, any allegations that those three, younger employees were treated more favorably than he was are insufficient to raise an inference of age-based discrimination.[10]  *Faldetta*, 2000 WL 1682759, at *10 (holding that plaintiff's "attempt to

---

[8]  In fact, during his deposition, Mr. Rockman repeatedly differentiated his responsibilities from Mr. Kelly's.  *See* Rockman Dep. at 72:15-72:23 (nothing that he had contact with the "insurance companies" while Mr. Kelly worked with the "business units."); 73:04-73:11 ("I was more involved in the rating [of the H&W plan]. [Mr. Kelly] was involved more in the benefit design.").

[9]  The Court notes that even if Mr. Rockman had established that he was similarly situated to Ms. Mohindra, it is undisputed that Ms. Mohindra resigned in December 2018 after USI determined that it could no longer continue to employ her in light of the loss of the L3 account. Def. 56.1 Stmt. ¶¶ 82-83. Ms. Mohindra was 39 years old at the time of Mr. Rockman's termination and her resignation. *Id.* ¶ 82.

[10]  In his opposition brief, Mr. Rockman states that USI hired "three or four" producers after he was terminated and speculates that those employees were "no more qualified than [him], and possibly less qualified." Pl. Opp. at 12-13.  To the extent that Plaintiff is arguing that USI was required to consider him for one of those producer positions, as noted *supra*, USI had no obligation to consider Mr. Rockman for any alternative position. *Campbell,* 201 F.3d at 430 ("an employer is not obliged to find another position for an employee who is about to be terminated.").

Moreover, to the extent that Mr. Rockman is arguing that he was treated less favorably than those "three or four" newly hired producers, Plaintiff has presented no evidence concerning the age, background, qualifications, or book of business of any of those individuals.  Accordingly, the Court is entirely unable to determine whether those individuals were similarly situated to Mr. Rockman in any way.  Finally, Mr. Rockman himself rejected the notion

compare himself to employees with different functions and titles is misplaced, because these employees were not similarly situated to [him] and do not provide a basis of comparison upon which he can now claim age discrimination.").

In the absence of any evidence in the record to support an inference of discrimination, Plaintiff resorts to speculation. Plaintiff asserts, *ipse dixit*, that USI "had no reason to exclude [him] from [its] efforts to continue employing the L3 team members other than [his] age," and that "the circumstances show that Defendant discharged Plaintiff based on age." Am. Compl. ¶ 19; Pl. Opp. at 12. These assertions are speculative, factually unsupported, and conclusory. *Gonzalez v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d 342, 353 (S.D.N.Y. 2003) (plaintiff's "conclusory and speculative assertions … are not enough to withstand summary judgment."); *Hu v. UGL Servs. Unicco Operations Co.*, No. 13-CV-4251, 2014 WL 5042150, at *6 (S.D.N.Y. Oct. 9, 2014) ("'[t]he plaintiff's belief that [he] has been the victim of age discrimination cannot defeat a motion for summary judgment in the absence of any corroborating evidence.'") (citations omitted). Moreover, and most significantly, Plaintiff's arguments are undermined by his own testimony. Plaintiff testified that he could not "point the finger at someone and say he wanted to get rid of me because I was old," and that he did not understand why he was terminated. Rockman Dep. at 180:06-180:14.

In sum, Mr. Rockman has failed to present any evidence that would permit a reasonable juror to conclude that his termination was motivated by his age. Accordingly Plaintiff has not established a *prima facie* case of age discrimination.

---

that he was a producer; he testified that he had never heard the term producer until it was written in his Employment Agreement and that the producers at USI "didn't do what [he] did." Rockman Dep. at 103:03-103:05, 104:22-104:23, 105:07-105:11, 109:12-109:18. Accordingly, any argument that Plaintiff was similarly situated to the three or four producers hired shortly after his termination is directly contradicted by Mr. Rockman's own testimony.

In sum, the fact that USI hired three or four individuals as producers after Mr. Rockman was terminated does not raise an inference of age discrimination.

### B. Plaintiff Has Failed to Rebut USI's Non-Discriminatory Reason for his Termination and Cannot Establish that his Age was the But-For Cause of his Termination

Even if Mr. Rockman had established a *prima facie* case of age discrimination, he has failed to show that Defendant's proffered non-discriminatory reason for his termination was pretextual and that age was the but-for cause of his termination. USI maintains that it terminated Mr. Rockman solely because of the loss of the L3 account, an indisputably non-discriminatory reason. *See Parcinski v. Outlet Co.*, 673 F.2d 34, 37 (2d Cir. 1982) (holding that employer had provided a non-discriminatory reason for its decision to terminate plaintiff-buyer because "buyers no longer had any duties to perform, and the job of buyer was eliminated, a move motivated solely by economy."). In her email attaching Mr. Rockman's formal termination letter, Ms. Mausser explained that USI was unable to continue his employment "due to the loss of L3." Garland Decl., Ex. 10. Ms. Mausser testified, "Mr. Rockman was let go because of the loss of L3," and that if "L3 [were] still a USI client, Mr. Rockman would still be employed." Mausser Dep. at 28:15-28:17. Ms. Fiore corroborated Ms. Mausser's testimony. Ms. Fiore testified that Mr. Rockman was terminated due to the loss of L3; she explained that in light of the loss of the account, there "wasn't any work for him" and, therefore, "no commissions to pay him." Fiore Dep. at 65:09-65:14, 167:09-167:11.

Mr. Rockman has offered no admissible evidence to rebut USI's non-discriminatory explanation. Mr. Rockman admitted that his responsibilities dissipated with the loss of the L3 account, and that he did not originate or work on any other accounts during his tenure at USI. Def. 56.1 Stmt. ¶¶ 20-23, 56, 58; Rockman Dep. at 85:07-86:08. Mr. Rockman also conceded that his annual draw decreased from $252,651 to $5,000 after the loss of the L3 account. Def. 56.1 Stmt. ¶ 48. Mr. Rockman's subjective opinion that "it almost certainly would have been cheaper and more sensible to maintain [his] employment than Mr. Kelly's, Ms. Lora's, or Ms.

Mohindra's," Pl. Opp. at 15, is not only factually unsupported but wholly irrelevant to whether USI has proffered a legitimate non-discriminatory reason for its decision. *See Spiess v. Xerox Corp.*, 481 F. App'x 700, 701 (2d Cir. 2012) (noting that "it is not the province of Courts to second-guess business decisions. What matters is why the employer took [the] action, not whether it was wise to do so."); *Parcinski*, 673 F.2d at 37 ("The Age Discrimination in Employment Act does not authorize the courts to judge the wisdom of a corporation's business decisions.").[11]

Moreover, Plaintiff has failed to adduce any evidence that his age was a factor in, let alone the but-for cause of, his termination. There is no evidence in the record that anyone at USI ever made a comment, let alone a derogatory comment, about Mr. Rockman's age,[12] and Plaintiff himself admitted that he cannot definitively say he was terminated "because [he] was old." Rockman Dep. at 179:11-180:14. Accordingly, Plaintiff's unsupported assertion that the "inescapable conclusion is that Defendant discriminated against Plaintiff on the basis of age," Pl. Opp. at 15, is insufficient to defeat summary judgment. *See Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 41 (2d Cir. 2012) (holding that "the third step of analysis required [plaintiff] to show

---

[11] Plaintiff's reliance on *Epstein v. Triton Advert., Inc.,* 123 F. Supp. 2d 745, 749–50 (S.D.N.Y. 2000), is misplaced. In *Epstein*, the defendant maintained that it terminated the plaintiff due to the loss of an account and the resulting inability to support his employment. *Id.* The court held that while defendant had provided a non-discriminatory explanation, a reasonable jury could conclude that defendant's proffered reason was pretextual because, *inter alia*, "plaintiff had worked on numerous accounts during his thirty years with [defendant] and was *not* exclusively tied to the [lost] account, despite the fact that it was his primary focus at the time of his termination," and that, "beyond the [lost] account, plaintiff provided other services and had other responsibilities at [the company.]" *Id.* (emphasis added). Here, by contrast, Mr. Rockman admitted that he had not worked on any accounts other than L3, BSI, and FSA since 1997, and that he had never attempted to acquire new business during his employment at USI. Def. 56.1 Stmt. ¶¶ 21, 56, 58.

[12] The closest evidence of a reference to Plaintiff's age is Ms. Fiore's statement that "Rockman's historical knowledge of L3's business and his twenty-year memory of the account, [] provided the most value to the L3 team… ." Fiore Decl. ¶ 5; Def. 56.1 Stmt. ¶ 29. At the outset, the Court notes that this statement is not, by any means, an explicit reference to Mr. Rockman's age; this statement could have been made about anyone who has been in the workforce for twenty years. Nonetheless, even assuming that Ms. Fiore's statement was a comment on Mr. Rockman's age, the statement is indisputably positive. Put differently, no reasonable juror could conclude that Ms. Fiore's statement suggested an age-based animus.

more than possible age bias; he was required to adduce sufficient evidence to permit a reasonable jury to find that 'but for' defendants' age bias, he would not have been terminated"); *Schwartz v. York Coll.,* No. 06-CV-6754, 2011 WL 3667740, at *7 (E.D.N.Y. Aug. 22, 2011) (granting summary judgment on ADEA claims where allegations of pretext were "unsupported by credible, admissible evidence beyond [plaintiff's] own conjecture, speculation, and opinion."); *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 386 (S.D.N.Y. 2007) (the plaintiff's "subjective belief that he was not treated fairly is simply not enough to demonstrate pretext.").

In sum, Plaintiff has failed to present admissible evidence to rebut Defendant's non-discriminatory explanation and to show that his age was the but-for cause of his termination.[13] Accordingly, Defendant's motion for summary judgment on Plaintiff's age discrimination claim is granted.

## II.   New York Labor Law Claim[14]

Plaintiff's final claim proves the truth of the expression: no good deed goes unpunished. Plaintiff alleges that USI "failed to timely pay [him] all earned commissions in accordance with New York Labor Law Section 191(1)(c), 3." Am. Compl. ¶ 46. In his deposition, Mr. Rockman clarified that this claim relates only to the payment of commissions received by USI and paid to

---

[13] Under the NYCHRL, a plaintiff need only show that age was a "motivating factor" in his termination. *Weiss v. JPMorgan Chase & Co.,* 06-CV-4402, 2010 WL 114248 (S.D.N.Y. Jan. 13, 2010). Even under this more forgiving standard, Mr. Rockman has failed to point to any evidence, beyond his own conclusory statements, from which a reasonable juror could conclude that age was a motivating factor in the decision to terminate him. *Twomey v. Quad/Graphics, Inc.*, No. 13-CV-1109, 2015 WL 5698002, at *10 (S.D.N.Y. Sept. 28, 2015) (granting summary judgment on the plaintiff's age discrimination claim under the NYCHRL where the plaintiff failed to "offer some proof beyond his own assertions that age was a factor considered by [his employer]"); *Rodriguez v. City of New York*, No. 09-CV-1378, 2011 WL 3610751, at *12 (E.D.N.Y. Aug. 16, 2011), *aff'd*, 484 F. App'x 637 (2d Cir. 2012) (granting defendant's motion for summary judgment on plaintiff's NYCHRL age discrimination claim where the record failed to establish that age was a motivating factor in plaintiff's termination).

[14] Having dismissed Plaintiff's sole federal law claim, the Court need not exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c). Nevertheless, the Court will exercise supplemental jurisdiction because doing so promotes judicial efficiency, given the current posture of the case.

Plaintiff after he was terminated (hereinafter the "May 2019 payment"). Rockman Dep. at 150:05-150:19; *see also* Pl. Opp. at 16.

The New York Labor Law governs the frequency with which employers must pay employees who work on commission. Specifically, Section 191(1)(c) provides, in relevant part:

> A commission salesperson shall be paid the . . . commissions and all other monies *earned or payable in accordance with the agreed terms of employment,* but not less frequently than once in each month and not later than the last day of the month following the month in which they are earned; provided, however, that if monthly or more frequent payment of . . . commissions are substantial, then additional compensation earned, including but not limited to extra or incentive earnings, bonuses and special payments, may be paid less frequently than once in each month, but in no event later than the time provided in the employment agreement or compensation plan.

NYLL § 191(1)(c) (emphasis added). When a commissioned salesperson is terminated, the NYLL requires the employer to pay the employee commissions earned or payable in accordance with the agreed terms of employment "not later than the regular pay day for the pay period during which the termination occurred." NYLL § 191(3). Mr. Rockman argues that USI violated the NYLL by paying his final commission on May 3, 2019, well beyond the time frame required by the NYLL. The Court disagrees.

By its terms, the NYLL only governs the payment of commissions "earned or payable in accordance with the agreed terms of employment." NYLL § 191(1)(c). Section 3.4 of Mr. Rockman's Employment Agreement expressly provided that Mr. Rockman "shall not be eligible to earn or receive any commissions received by the Company *after* [he] is no longer employed" and that "if [Rockman's] employment hereunder is terminated for any reason … the Company shall calculate commission earned by [him] and *received* by the Company *prior* to [his] termination." Garland Decl., Ex. 4 § 3.4 (emphasis added). Because it is undisputed that the May 2019 payment constituted commissions received by USI *after* Mr. Rockman was

15

terminated,[15] those commissions were not "earned or payable in accordance with" Mr. Rockman's agreed terms of employment.[16]  As such, the timeliness *vel non* of the May 2019 payment is not governed by the NYLL.  *Dhir v. Carlyle Grp. Emp. Co.,* No. 16-CV-06378, 2017 WL 4402566, at *10 (S.D.N.Y. Sept. 29, 2017) (dismissing plaintiff's § 191(1)(c) claim regarding the timeliness of the payment of an orally-promised bonus because the "alleged oral bonus promise was not 'in accordance with the agreed terms' of Plaintiff's employment," which prohibited oral modifications.).

Mr. Rockman's argument that his termination letter, which included USI's offer to pay him commissions received after his termination, modified the terms of his Employment Agreement is nonsensical.  Pl. Opp. at 16-17.  At the outset, Plaintiff has offered no evidence that the parties intended the termination letter to modify the terms of Mr. Rockman's underlying Employment Agreement.  *See Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 783 (2d Cir. 2003) ("fundamental to the establishment of a contract modification is proof of each element requisite to the formulation of a contract, including mutual assent to its terms.").  To the contrary, the termination letter, by its express terms and plain meaning, *terminated* Mr. Rockman's employment with USI.  Moreover, in an email to Ms. Fiore as USI was finalizing the termination letter, Ms. Mausser confirmed that USI was *not* amending Mr. Rockman's Employment Agreement to allow for the May 2019 payment.  Instead, despite the express terms of his Employment Agreement, USI had agreed to "make an exception and pay him commissions on L3 that were earned prior [to his termination], regardless of when they were received."

---

15        The commissions were received from L3 in early 2019.  Def. 56.1 Stmt. ¶ 89.

16        *See Giugliano v. FS2 Capital Partners*, LLC, No. 14-CV-7240, 2015 WL 5124796, *15 (E.D.N.Y. Sept. 1, 2015) ("It is beyond dispute that the phrase 'in accordance with the agreed terms of employment' means that the parties to an employment agreement may define for themselves the circumstances under which wages [or commissions] are 'earned.'").

Garland Decl., Ex. 16 ("[H]is actual agreement says the money has to be earned and received prior to termination in order to be paid on it. The region is saying we will make an exception and pay him commissions on L3 that were earned prior, regardless of when they were received because of the unique situation of this client; but we are not amending the entire agreement to accomplish that.").

Finally, even assuming USI had intended Mr. Rockman's termination letter to modify the Employment Agreement, the termination letter would not have accomplished that goal because it does not comply with Section 3.5 of the Employment Agreement; Section 3.5 sets out the requirements by which USI can modify the Agreement. Specifically, Section 3.5 of the Employment Agreement provides that USI may "modify the policies and terms in Section 3 by giving at least thirty (30) days written notice to [Mr. Rockman]," and that "[Mr. Rockman's] *continued employment* hereunder following any change shall be considered sufficient consideration for, and acceptance, of such change." Garland Decl., Ex. 4 (emphasis added). The termination letter did not give Mr. Rockman "at least thirty (30) days written notice" of the alleged modification; it merely informed Mr. Rockman of USI's decision that it would voluntarily pay him commissions received after his termination. *See id.*, Ex. 11. In addition, because the letter, by its terms, terminated Mr. Rockman's employment, Plaintiff did not, and could not, provide any consideration for the alleged change. Accordingly, the termination letter did not modify the terms of Mr. Rockman's Employment Agreement.

In sum, Defendant's motion for summary judgment as to Plaintiff's NYLL claim is granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED in its entirety. The Clerk of Court is respectfully directed to terminate all open motions and close this case.

**SO ORDERED.**

Date:  August 16, 2021
      New York, New York

**VALERIE CAPRONI**
**United States District Judge**